

**FILED**
May 22 2015, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Lori B. Schmeltzer
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Charles D. Howard,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 22, 2015

Court of Appeals Case No.
14A04-1406-CR-286

Appeal from the Daviess Superior
Court

The Honorable Robert E. Springer,
Special Judge

Lower Court Cause No.
14D01-1106-CM-512

**Pyle, Judge.**

# Statement of the Case

Charles Howard ("Howard") appeals his convictions, following a jury trial, for two counts of Class A misdemeanor resisting law enforcement,[1] Class B misdemeanor harassment,[2] Class B misdemeanor public intoxication,[3] and Class B misdemeanor disorderly conduct.[4]

Howard makes three disjointed arguments on appeal under a general issue of due process. First, he mainly argues that we should reverse and dismiss his convictions for resisting law enforcement and public intoxication because the trial court never ruled on part of his motion to suppress/dismiss. Second, he argues that any evidence obtained after his arrest should have been excluded because the police did not give him a *Miranda* warning upon his arrest. Third, he contends that the trial court should have dismissed all charges against him pursuant to Criminal Rule 4.

We conclude that Howard's arguments are either waived or otherwise without merit because: (1) the trial court issued a ruling on his motion to suppress/dismiss, and Howard did not object to the admission of evidence at trial; (2) the State did not introduce or seek to admit into evidence any of

---

[1] IND. CODE §§ 35-44-3-3(a)(1), (a)(3). We note that, effective July 1, 2012, the resisting law enforcement statute was recodified at INDIANA CODE § 35-44.1-3-1 and that it was subsequently amended in 2013 and again in 2014. Because Howard committed his crime in 2011, we will refer to the statute in effect at that time.

[2] I.C. § 35-45-2-2(a)(1).

[3] I.C. § 7.1-5-1-3 (subsequently amended in 2012).

[4] I.C. § 35-45-1-3(a)(1) (subsequently amended in 2014).

Howard's post-arrest statements; and (3) Howard did not file a motion for discharge under Criminal Rule 4 or object to the trial court's setting of any of his trial dates. Accordingly, we affirm his convictions.

[4] Affirmed.

# Issue

[5] Whether the various arguments Howard attempts to raise on appeal are either waived or otherwise without merit.

# Facts

[6] On June 17, 2011, Howard and his then wife, Tamela Howard ("Tammy"), lived on Main Street in Washington, Indiana just down the street from the American Legion where Tammy worked. That day, Tammy and Howard got into an argument, and she and the children went to stay at her older son's house.

[7] Late that evening, Tammy went into the American Legion to cash a check and was noticeably upset. While there, Tammy told her co-worker, Angie Gottman ("Gottman"), who was bartending that night, that she and Howard had been in an argument. About five to ten minutes after Tammy left, which was around 12:30 a.m. on June 18, Howard phoned that American Legion looking for her, and Gottman answered the phone. Gottman recognized Howard's voice, and the caller ID on the phone showed Howard's name and phone number. Gottman informed Howard that Tammy had been there but had just left. Howard told Gottman to tell Tammy that he was going to shut off her phone,

and Gottman repeated that Tammy was not there. Gottman noticed that Howard "sounded intoxicated and upset." (Tr. 78).

[8] Howard hung up but continued to call Gottman back multiple times over the next twenty or so minutes. Gottman repeatedly told him that she did not know where Tammy was and to stop calling. Howard told Gottman, "you are a bitch . . . don't mess with me" and "don't fuck with me, I'll fuck with you." (Tr. 88, 90). After the third or fourth call, Gottman told Howard that she was going to call the police. Howard called Gottman back "taunting" her and asking her where the police were. (Tr. 90). Gottman told him that "if [he] just quit calling [her] this w[ould] stop[,]" but "[h]e kept calling" and sometimes he would hang up when she answered. (Tr. 90). As soon as Gottman hung up the phone, Howard called again. Howard made more than about fifteen calls including hang ups.

[9] At 12:48 a.m., Gottman called police to report that she was getting harassing phone calls from Howard, and Washington Police Officers Buck Seger ("Officer Seger"), Kyle Babrick ("Officer Babrick"), Greg Dietsch ("Sergeant Dietsch"), and Officer Kevin Buckley ("Officer Buckley") were dispatched to the American Legion. When the officers arrived, Gottman, with a cordless telephone in hand, was standing outside of the American Legion building. As Gottman was telling the officers about Howard's conduct, Howard phoned her again. Gottman showed the officers her phone, which had caller ID, and told them that it was Howard calling her again. At the same time, Gottman pointed down the street toward Howard's house and said, "there he is right now." (Tr.

119).  The officers saw a "male figure" standing on the sidewalk near a parked vehicle, and they "noticed that there was a glow of a cell phone" near his face. (Tr. 119).

[10] After Gottman pointed down the street and identified Howard as the man who was making the harassing phone calls, Officers Seger and Babrick, both in uniform, walked up the street to approach him.  Officer Seger saw that Howard was "[i]n the same spot right in front of the vehicle on the sidewalk there[,]" which was a "public sidewalk" on a "public street[.]"  (Tr. 122).  As the officers got closer to Howard, he "turned away" from them and "t[ook] off running[.]" (Tr. 121, 122).  The officers repeatedly yelled, "stop police," but Howard continued to run away from them.  (Tr. 122, 123).  Officer Seger caught up to Howard outside of his house on a porch near his side door.  The officer grabbed Howard's arm, told him to stop and come with the officer to talk, but Howard refused, tried to pull away from the officer, and said he was going inside. Officer Seger continued to grab hold of Howard, who then went inside the house and pulled the officer inside with him.

[11] Once inside the house, Officer Seger "couldn't tell if [Howard] had . . . any weapons" and "tr[ied] to get him to turn around."  (Tr. 126).  Howard kept "warding off [the officer's] attempts to gain control of him."  (Tr. 127).  Officer Babrick followed Howard and Officer Seger into the house, and "there was a brief struggle of [the officers] attempting to gain control of [Howard's] arms to place him into handcuffs."  (Tr. 127).  As they turned Howard around, Officer Seger smelled a "[p]retty heavy odor of alcoholic beverage" on Howard's breath

and noticed that his speech was slurred and that his eyes were "blood shot and somewhat glossy." (Tr. 128).

[12] Howard cursed and continued to struggle with the officers as they attempted to lead him out of the house to a police car. As they had Howard at the door of the house, he was "irate and combative[,]"and Sergeant Dietsch had to help them escort Howard down to the car. (Tr. 205). Even at the car, Howard struggled with the officers, and one of them had to go inside the car and "physically pull him into the police car." (Tr. 131). Howard was then "cursing and being belligerent in the backseat of the vehicle." (Tr. 132).

[13] After Officers Seger and Babrick transported Howard to the jail, Sergeant Dietsch waited at Howard's house until Tammy got there. The sergeant explained to Tammy how Howard had been calling Gottman. "After speaking with her about the details of the night, she volunteered [Howard's cell] phone and the contents inside of it to [Sergeant Dietsch.]" (Tr. 262). The sergeant took the cell phone to the police station, took photos of various screens from the cell phone, and later returned it to Tammy.

[14] On June 23, 2011, the State charged Howard with: Count 1, Class A misdemeanor resisting law enforcement (based on fleeing); Count 2, Class A misdemeanor resisting law enforcement (based on forcibly resisting, obstructing, or interfering); Count 3, Class B misdemeanor harassment; and Count 4, Class B misdemeanor public intoxication. Later, on June 22, 2012, the State added Count 5, Class B misdemeanor disorderly conduct. All five

charges related to the events of June 18, 2011, and were filed under cause number 14D01-1106-CM-512. Howard was then released on bond.[5]

[15] After being charged, Howard informed the trial court that he would be representing himself. Thereafter, he filed various pro se pleadings, including "Defendant's Contentions of Events for Arrest Early Morning 18 June 2011[,]" in which he "admit[ted] he had been drinking [on the] evening of Friday 17 June 2011 and [that he] did call the American Legion trying to locate his wife." (App. 66).[6] In his pleading, he stated that he believed that Gottman had "called the police on him due to a comment he made" to her while on the phone. (App. 66). He also stated that he "feared being arrested for public intoxication . . . ." (App. 66).

[16] On August 4, 2011, Howard filed a pro se "Motion For Suppression of Evidence/Dismissal of All Charges" ("motion to suppress/dismiss"), arguing that the trial court should dismiss the charges against him because the police had "violated his fourth amendment right of search and seizure" when they entered his house without permission and did not obtain a warrant for [his] arrest. (App. 112). He also argued that the police failed to obtain a warrant for

---

[5] On September 25, 2011, the State arrested Howard and charged him with Class D felony attempted residential entry and Class A misdemeanor criminal trespass under cause number 14D01-1109-FD-899. The State then filed a motion to revoke Howard's bond, and the trial court held a hearing October 12, 2011, modified the conditions of Howard's bond, and added an additional condition that he not consume any alcoholic beverages. This subsequent cause was initially set for trial on the same day as his charges in cause number 14D01-1106-CM-512. Later, upon a motion by Howard, the trial court severed the two causes.

[6] We note that some of the pleadings contained in Howard's Appellant's Appendix do not contain the trial court clerk's file stamp while others do.

his cell phone and, as a result, any evidence "obtained from the illegally seized phone should be suppressed." (App. 114). Thereafter, the State responded to Howard's motion to suppress/dismiss, and the trial court set a hearing on Howard's motion for October 14, 2011.

[17] Meanwhile, on October 4, 2011, Howard filed a "Motion for Dismissal of All Charges without Hearing or Further Summation[,]" stating that he felt "it would be a waste of the court[']s time holding a hearing on the matter" because "all reasons for dismissal ha[d] been met[.]" (App. 122). The trial court denied this motion.

[18] On October 14, 2011, the trial court held a hearing on Howard's motion to suppress/dismiss, and Howard represented himself pro se. The record on appeal does not contain a transcript of this hearing because Howard did not request that this hearing be transcribed. However, the chronological case summary ("CCS") reveals that the trial court denied Howard's "Request for Dismissal[.]" (App. 6). The trial court, pursuant to a request by the State and over Howard's objection, continued the hearing on Howard's motion to suppress his phone records to October 24, 2011.

[19] A few days later, on October 19, 2011, an attorney entered an appearance on behalf of Howard and also filed a motion to vacate the evidentiary hearing on Howard's motion to suppress scheduled for October 24. The trial court then vacated the suppression hearing and set the case pre-trial hearings and for trial on March 20, 2012.

[20] On February 2, 2012, Howard, still represented by counsel, filed a motion to continue the March 20, 2012 trial. The trial court granted the motion and reset the trial for November 27, 2012. Thereafter, Howard's counsel conducted various depositions, and then, on June 19, 2012, filed a motion for a plea hearing. The trial court set the guilty plea hearing for August 1, 2012.

[21] About one week before the plea hearing, on July 25, 2012, Howard's counsel filed a motion to withdraw as counsel. The trial court granted the motion and vacated the guilty plea hearing. Then, pursuant to a motion to continue the November 27, 2012 trial date filed by Howard, the trial court scheduled the trial for March 19-22, 2013.

[22] On March 7, 2013, Howard, pro se, filed a motion for a hearing on his motion to suppress the cell phone evidence obtained by police after they arrested him. Thereafter, Howard moved to continue the March 2013 trial. He also filed a pro se motion for change of judge. The trial court held a hearing on April 22, 2013.[7] The trial court denied his motion for a change of judge and set the hearing for Howard's motion to suppress his phone records and any other pending motions for July 26, 2013. The trial court also rescheduled the jury trial for November 26-29, 2013.

[23] Subsequently, on May 1, 2013, Howard filed a second pro se motion for a change of judge, which the trial court denied. He also attempted to appeal the

---

[7] This hearing was not transcribed because Howard did not request a transcript for the hearing when he filed his notice of appeal.

trial court's denial of his first motion for change of judge. This attempted appeal was later dismissed by our Court.

[24] On July 26, 2013, the trial court held a hearing on Howard's motion to suppress his phone records, and he appeared pro se at this hearing. The State presented its witnesses, and Howard presented one witness. The trial court continued the suppression hearing to October 28, 2013 so that Howard could present another witness. At the end of that October 2013 hearing, the trial court informed the parties that it was taking Howard's motion to suppress under advisement so that it could re-read the depositions that Howard had published. The trial court also informed Howard that any rulings on motions were preliminary and that he would need to renew any objections to testimony at trial.

[25] Two days after the October 28 suppression hearing, Howard filed a pro se "Notice of Alleged Prosecutorial Misconduct/Witness Tampering," alleging that the prosecutor had "contaminated" a witness during the October 28 suppression hearing by discussing previous testimony with a witness. (App. 164, 165). In his motion, Howard stated that he was filing a request for investigation with the Disciplinary Commission.

[26] During November and December 2013, Howard filed various pro se pleadings, including a Suppression of Evidence Brief, a Trial Readiness Certificate, a Notice of Request for Investigation, a Motion for Discovery, and a Motion of Subpoena for Courthouse Video.

[27] On January 10, 2014, Howard filed a motion in limine, arguing that the trial court should prohibit the introduction of any statements he may have made to the arresting police officers because the officers did not give him a *Miranda* warning. That same day, he filed a "Motion to Dismiss with Prejudice." (App. 200). In this motion, he renewed his motion to suppress the evidence obtained from his cell phone, and again argued that the prosecutor had discussed prior testimony with a witness during the second suppression hearing.

[28] On January 25, 2014, Howard filed, pursuant to Trial Rule 53.2 ("the lazy judge rule"), a "Praecipe" with the Executive Director of the Division of State Court Administration ("the Executive Director"). (App. 202). Howard sought to have a special judge appointed based on the trial court's failure to rule on his motion to suppress. Subsequently, on February 6, 2014, the Executive Director determined that Howard's case would be withdrawn from the trial court and appointed a special judge.

[29] On March 6, 2014, the trial court—now with the special judge presiding—held a hearing on all pending motions, which included, among others, Howard's motion to suppress, Howard's motion for a change of prosecutor, and motions in limine filed by both Howard and the State. At the beginning of the hearing, the trial court advised Howard of the consequences of representing himself and had Howard sign a waiver of his right to counsel. During the hearing, the trial court denied Howard's motion for a change of prosecutor and granted Howard's motion to suppress the cell phone evidence. The trial court took the

motions in limine under advisement and later issued orders denying Howard's motion in limine and granting the State's motion in limine.

[30] On May 8, 2014, the trial court held a jury trial at which Howard represented himself pro se. The police officers testified to the facts above, including that Howard was on the public sidewalk that night, and Howard did not object to any of the officers' testimony.

[31] Howard testified on his own behalf and, while doing so, he admitted that he made "multiple phone calls" to Gottman and admitted that he was "argumentative" and "rude" to her. (Tr. 243, 244). During his testimony, he extensively discussed the details of his phone calls, including the time that he called and the duration of each call. Howard attempted to admit into evidence the cell phone records that he had previously successfully moved to suppress. The State objected to the exhibit, upon which Howard had written, based on authenticity and a lack of foundation, and the trial court sustained the State's objection. The State then sought to admit the cell phone records during rebuttal, and Howard had no objection to the admission. He also admitted that he had been "under the influence" on the night he made the phone calls to Gottman. (Tr. 273). Howard's main defense to his offenses was that he had not been on the public sidewalk at any time and had instead been on his curtilage at all relevant times. He also testified that he was already in the house when the officers approached his house, and he testified that they had forced their way into his house. Finally, he testified that, when he was struggling with the officers, he was merely "putting up a political protest due to . . . having [his]

Fourth Amendment rights violated." (Tr. 255). The jury found Howard guilty on all five counts as charged.

[32] On May 22, 2014, the trial court held a sentencing hearing. At the beginning of the hearing, Howard said that he wanted to move for a mistrial based on undisclosed juror information, and the trial court denied his motion. The trial court proceeded to sentencing and imposed a 364-day sentence with 304 days suspended to probation for each of his Class A misdemeanor convictions in Counts 1 and 2 and a 180-day sentence to be served in the Daviess County Correctional Facility with 120 days suspended and 304 days of probation for his Class B misdemeanor convictions in Counts 3, 4, and 5. The trial court ordered that all sentences be served concurrently and ordered Howard to serve thirty days of his executed sentence on work release and the remaining thirty days in home detention. Howard now appeals.[8]

# Decision

[33] Howard makes a mish-mash of arguments under the general guise of one issue alleging that he was deprived of his due process rights. His main argument is that the trial court erred because it did not rule on his motion to

---

[8] Howard filed both a notice of appeal and a motion to correct error on the same day. The trial court did not rule on his motion to correct error. While Howard's notice of appeal would be considered premature, we have previously explained that an appellant's right to appellate review is not defeated because such a premature filing is "simply a defect in form that is capable of being cured" and does not adversely affect the substantial rights of either party. *See Ivy v. State*, 847 N.E.2d 963, 955-56 (Ind. Ct. App. 2006); *Reed v. State*, 796 N.E.2d 771, 773 n.2 (Ind. Ct. App. 2003) (addressing an appellant's appeal even though he filed a premature notice of appeal and then two motions to correct error).

suppress/dismiss in regard to his argument that there was a warrantless entry and arrest.[9] As an offshoot of this argument, he contends that any evidence of resisting law enforcement and public intoxication should have been suppressed. He also makes peripheral allegations of error, contending that the police did not advise him of his *Miranda* rights at his house when they arrested him and that his right to a speedy trial, pursuant to Criminal Rule 4, was violated.

[34] The State contends that Howard has waived these arguments because he did not raise a relevant objection at trial, he makes no cogent argument now on appeal, and/or the arguments are otherwise meritless. We agree.

[35] First, turning to Howard's main argument regarding his allegation that the trial court erred because it failed to rule on part of his motion to suppress/dismiss, we note that the record before us indicates that the trial court did indeed rule on this portion of Howard's motion. When Howard filed his motion to suppress/dismiss on August 4, 2011, he argued that the trial court should dismiss the charges against him because the police had "violated his fourth amendment right of search and seizure" when they entered his house without permission or a warrant and arrested him. (App. 112). Additionally, he contended that the trial court should suppress any evidence obtained from his cell phone because the police had not obtained a warrant for his cell phone. The trial court held a hearing on Howard's motion to suppress/dismiss on

---

[9] Howard makes no challenge to the trial court's ruling regarding his motion to suppress any evidence obtained from his cell phone.

October 14, 2011.  As mentioned above, Howard did not request that this hearing be transcribed; nevertheless, the CCS indicates that the trial court denied the portion of Howard's motion to suppress/dismiss that he now challenges.  Specifically, the CCS entry for October 14, 2011 provides:

> State appears by Joseph Koenig, defendant appears in person and without counsel; hearing held on Defendant's Motion for Suppression of Evidence/Dismissal of All Charges; *Court orders Defendant's Request for Dismissal be denied;* in regard to request for suppression of phone[,] State of Indiana requests continuance; defendant objects; Court grants continuance and reassigns hearing on Motion to Suppress seizure of cell phone owned by Charles Douglas Howard, October 24, 2011, at 9:00 a.m.

(App. 6) (emphasis added).  Thus, the trial court specifically denied the part of Howard's motion that he alleges was not addressed.  Accordingly, Howard's allegation that the trial court erred by failing to rule on part of his motion to suppress/dismiss is without merit.

[36]    Moreover, as this appeal is following a trial, Howard's argument challenging a pretrial ruling on a motion to suppress/dismiss is further without merit because he was required—and failed—to make a timely, relevant objection at trial to any evidence that he now contends should have been suppressed in order to preserve any appellate challenge to the admission of evidence.  *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) ("A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for

appeal, whether or not the appellant has filed a pretrial motion to suppress."), *reh'g denied*.[10]

[37]     In regard to Howard's *Miranda* allegation of error, he contends that "[a]ny evidence derived eafter [sic] his arrest should be suppressed" because the officers did not give him a *Miranda* warning when they arrested him. (Howard's Br. 10-11). Again, because this appeal follows a trial, Howard's alleged error should be in the context of an admission of evidence. The State asserts that it is "perplexed at Howard's [*Miranda*] argument as the State never admitted or sought to admit any statements Howard made at the time of his arrest, or even afterward." (State's Br. 14-15). The State further contends that "Howard's incoherent arguments are a red herring and should be disregarded as meritless." (State's Br. 15). Because the record on appeal confirms the State's assertion that it did not seek to admit statements made by Howard after his arrest, we too are perplexed by Howard's argument and accordingly conclude that his argument is without merit.[11]

[38]     Lastly, turning to Howard's Criminal Rule 4 argument, we note that he has quoted Criminal Rule 4(C), but his citation for the quotation indicates that he is

---

[10] In his reply brief, Howard argues that we should review his argument under the fundamental error doctrine. He did not, however, raise this argument in his initial appellate brief. Therefore, he has waived review of this argument. *See French v. State*, 778 N.E.2d 816, 825-26 (Ind. 2002) (holding that an appellant's argument, raised for the first time in his reply brief, was waived "by not raising it in his principle brief").

[11] This argument would also be waived due to his lack of cogent argument. *See* Ind. App. R. 46(A)(8)(a) (providing that an appellant's argument must be supported by cogent reasoning); *Shane v. State,* 716 N.E.2d 391, 398 n. 3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

quoting Criminal Rule 4(D). Because he argues that he should have been tried within one year, we presume that his argument is meant to be under section 4(C). Nevertheless, his argument under Criminal Rule 4 is also waived. As Howard concedes in his Reply Brief, he never objected to his trial date or moved to dismiss his case under Criminal Rule 4. Because Howard did not file a motion for discharge under Criminal Rule 4(C) or object to the trial court's setting of any of his trial dates, he has waived his claim that Criminal Rule 4(C) was violated. *See, e.g.*, *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000) (holding that defendant waived his Criminal Rule 4(C) claim by neither objecting to the setting of the trial date nor moving the trial court for discharge).[12]

Affirmed.

Barnes, J., concurs in result.

May, J., concurs.

---

[12] Additionally, this Criminal Rule 4 argument would be waived due to a lack of cogent argument. "When a defendant makes a motion for discharge pursuant to Criminal Rule 4, the burden is on the defendant to show that he has not been timely brought to trial and that the defendant is not responsible for the delay." *Feuston v. State*, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011). Howard, however, failed to do so. Because Howard failed to provide cogent argument to support his claim of error, he has waived appellate review of such claim. *See* App. R. 48(A)(8)(a); *see also Sipe v. State*, 690 N.E.2d 779, 781 (Ind. Ct. App. 1998) (holding that defendant who failed to present cogent argument waived his speedy trial argument on appeal). Moreover, we reject Howard's argument—made for the first time in his Reply Brief—that we should review his Criminal Rule 4 argument based on fundamental error. *See French*, 778 N.E.2d at 825-26.