

**FILED**

Dec 09 2015, 6:53 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANTS PRO SE | ATTORNEYS FOR APPELLEES |
| Chuck W. Adams<br>Pendleton, Indiana | Attorneys for ArvinMeritor, Inc., *et al.*<br>Brian L. McDermott<br>Christopher C. Murray<br>Ebony A. Reid<br>Ogletree Deakins Nash Smoak & Stewart<br>P.C.<br>Indianapolis, Indiana |
| Charles E. Howard<br>Morgantown, Indiana | |
| Attorneys for *Amici Curiae*, Michael<br>Kincade, Antonio Collier, and David<br>Marzini<br>Robert S. Rifkin<br>Clinton E. Blanck<br>Maurer Rifkin & Hill, P.C.<br>Carmel, Indiana | Attorneys for State of Indiana<br>Gregory F. Zoeller<br>Attorney General of Indiana<br>Frances Barrow<br>Deputy Attorney General<br>Indianapolis, Indiana |
| | Attorneys for Corizon, Inc., *et al.*<br>Rachel A. East<br>Bleeke Dillon Crandall<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chuck W. Adams, Charles E.<br>Howard, et al.,<br><br>*Appellants-Plaintiffs,*<br><br>v.<br><br>ArvinMeritor, Inc., et al.,<br><br>*Appellees-Defendants* | December 9, 2015<br><br>Court of Appeals Case No.<br>49A02-1406-PL-465<br><br>Appeal from the Marion Superior Court<br><br>The Honorable James B. Osborn, Judge<br><br>Trial Court Cause No.<br>49D14-1206-PL-25688 |

**Robb, Judge.**

# Case Summary and Issues

Chuck Adams and Charles Howard are inmates at the Indiana Department of Correction ("DOC") Correctional Industrial Facility ("CIF") in Madison County. Both Adams and Howard participate in an offender work program at CIF operated by Meritor. In a single complaint, Adams raised two legally independent but factually related claims: 1) a claim for unpaid wages against the Meritor and certain State defendants[1] joined by Chuck Howard and all ArvinMeritor-Meritor-PEN Brake Shop Employees similarly situated, and 2) an individual personal injury claim against the Medical and additional State ("State-CIF") defendants arising from injuries Adams allegedly sustained on the job.[2] The trial court granted the Meritor and State defendants' Trial Rule 12(B)(6) motions to dismiss the wage claim, which alleged there is no private right of action to sue for such wages. The trial court granted summary judgment to the Medical and State-CIF defendants on the personal injury claim on the basis of Adams's failure to exhaust his administrative remedies.

---

[1] The named "Meritor defendants" consist of ArvinMeritor, Inc.; Meritor, Inc.; Meritor Heavy Equipment Systems, LLC; Joseph L. Mejaly; Catherine Auckland; Vernon Baker; ArvinMeritor; ArvinMeritor Brake Shop/Meritor Brake Shop; Dwight Treen; Jon Fowler; and Matt Durham. *See* Appellants' Appendix at 32.

The named "State defendants" relevant to the wage claim are Edwin G. Buss; Bruce Lemmon; Indiana Department of Correction; PEN Products; Mike Herron; Doug Evans; Becky Deeb; Dawn Morgan; Mark Spratt; Gregory F. Zoeller; Christopher A. Ruhl; Mark E. Everson; and the State of Indiana. *See id.*

[2] The named "Medical defendants" are Corizon, Inc. (formerly known as Correctional Medical Services); Kathleen Coffman, L.P.N.; Joyce Baker, R.N.; and Diane Elrod, M.D. *See id.*

The additional named "State-CIF defendants" as to the personal injury claim consist of Correctional Industrial Facility; Donna Caneygee; Melanie Guffey; and Mike Raines. *See id.*

Adams raises several issues on appeal, of which we address three: 1) whether a private right of action is available to enforce Indiana Code Title 11;[3] 2) whether Adams was required to exhaust administrative remedies before bringing a personal injury action; and 3) whether Adams had a right to participate in a hearing on a number of motions.[4] We conclude Adams did have a private right of action to pursue his wage claim and therefore the trial court erred in granting the Meritor and State defendants' motions to dismiss as to that claim. We further conclude Adams had an available administrative remedy as to his personal injury claim but failed to pursue it to completion and therefore the trial court properly granted summary judgment to the Medical and State-CIF defendants. Finally, we conclude Adams was allowed to participate in the hearing through the submission of documentary evidence and the trial court did

---

[3] Adams phrases this issue as whether there is a private right of action to enforce the provisions of Title 11 and/or Article 1, Section 21 of the Indiana Constitution. *See* Corrected Appellants' Brief at 17. Although Adams references Article 1, Section 21 in his summary of argument and in his point headings, he has engaged in no independent analysis regarding that constitutional provision and we therefore decline to address it. *See* Ind. Appellate Rule 46(A)(8)(a) (stating each argument must be supported by cogent reasoning and citations to the authorities relied on); *Hines v. State*, 981 N.E.2d 150, 154 n.2 (Ind. Ct. App. 2013) (failure to develop an independent argument regarding state constitutional rights results in waiver of that claim).

[4] The remaining issues Adams raises are whether the plaintiffs had a right to the appointment of counsel due to their indigency and "whether it was fundamental constitutional error" for the trial court to dismiss some of the claims and to grant summary judgment as to others. Corrected Appellants' Brief at 2-3.

Indiana Code section 34-10-1-2(b) states that if a court is satisfied that a person does not have sufficient means, it shall allow the person to prosecute an action as an indigent person and "may, *under exceptional circumstances*, assign an attorney" to prosecute the case. (Emphasis added.) The trial court did admit Adams to prosecute this action as an indigent person. However, Adams makes no argument that there are exceptional circumstances in this case warranting appointment of counsel, and he has therefore waived any claim of error for failure to appoint counsel. *See Howard v. State*, 32 N.E.3d 1187, 1195 n.12 (Ind. Ct. App. 2015) (failure to provide cogent argument in support of claim of error waives appellate review of such claim).

As to the alleged "fundamental constitutional error" in granting the motions to dismiss and motions for summary judgment, we can discern from the brief no independent argument or support for those issues and therefore do not address them. *See id.*

not err in denying his motion to appear by video conference or same-day transport. We reverse in part and affirm in part.

## Facts and Procedural History

[3] In February 2010, the Meritor defendants entered into a contract with the DOC to operate a brake shop at CIF employing offenders to remanufacture brake shoes for sale by Meritor to the trucking industry. The contract specifically states it is a "revenue generating contract that will create job opportunities for offenders[,]" Appellants' App. at 89, and that the parties will "comply with all federal, state and local laws, rules, regulations and ordinances applicable to its performance," *id.* at 96. The contract provides there will be an area within CIF for Meritor's exclusive use, gives Meritor the right in conjunction with the DOC to screen applicants, lets Meritor control the number of workers and the daily schedule of the operation, and allows Meritor to request removal and replacement of a worker for any valid reason. Moreover, Meritor pays the DOC rent, pays its own utilities, and provides all equipment, training, and supervision of offenders. *See id.* at 89-118.

[4] In March 2010, Adams applied, interviewed, and was hired by Meritor to work in the brake shop. In April 2010, Adams was informed that his pay would begin at fifty cents per hour, eventually increasing to $1.10 per hour, with periodic bonuses. Adams asserts the pay for comparable work by non-inmates at the Meritor plant in Plainfield is at least $11.71 per hour. *See id.* at 79.

[5] In September 2010, Adams was injured in a workplace accident and was tended to by the Medical defendants. Adams alleges his injuries were inadequately treated and ultimately led to a heart attack that was also inadequately treated. He made a claim regarding the lack of proper medical care that he alleges the State-CIF defendants failed to adequately investigate.

[6] In September 2012, Adams filed an amended complaint regarding the unpaid wages and his injuries.[5] In October, the Meritor defendants moved to dismiss the complaint, and Adams filed a response setting out his legal arguments against dismissal. Also in October, Adams filed a Verified Emergency Motion for Preliminary Injunction. The trial court sent notice to Adams on November 7 that a hearing had been scheduled for December 3 on the Meritor defendants' motion to dismiss and his motion for preliminary injunction. Adams moved to appear at the hearing by video conference or same-day transport, but the motion was not received by the court until November 28. The Meritor defendants appeared at the hearing but Adams did not. In its order dated December 17, the trial court denied Adams's motion to appear by video conference or for same-day transport, finding it was untimely and allowed no time to arrange video conferencing; the court had no obligation to transport Adams in a civil case and no resources to do so; and noting the court had nonetheless twice attempted to reach Adams or his contact person prior to the

---

[5] The record is not entirely clear, but it appears Adams's original complaint was filed in June 2012 in Marion Superior Court, Civil Division 6, and was dismissed on the State defendants' motion. The case was then moved to Marion Superior Court, Civil Division 14, and Adams filed this amended complaint.

hearing to arrange a telephonic appearance but the calls went unanswered. The trial court also denied Adams's motion for preliminary injunction and granted the Meritor defendants' motion to dismiss.

[7] In December 2012, all State defendants moved to dismiss the complaint against them. The Medical defendants subsequently joined in the motion to dismiss. On January 23, 2013, the trial court held a hearing at which the State and Medical defendants appeared in person and Adams appeared via telephone. Following the hearing, the trial court issued an order finding that Adams's complaint stated two claims upon which relief might be granted: a claim of deliberate indifference under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983, and a medical malpractice claim, both arising from the alleged circumstances surrounding Adams's injury. The trial court denied the Medical and State-CIF defendants' motions to dismiss as to those two claims and granted the motions to dismiss as to all other claims, including all of Howard's claims.

[8] The Medical and State-CIF defendants then filed motions for summary judgment alleging they were entitled to judgment as a matter of law on the remaining claims because Adams had failed to exhaust his administrative remedies before filing suit. The trial court granted summary judgment to both the Medical and State-CIF defendants. All claims as to all parties having been resolved, Adams initiated this appeal.

# Discussion and Decision

## I. Wage Claim

### A. Standard of Review

We review de novo the trial court's ruling on a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010). A Rule 12(B)(6) motion tests the legal sufficiency of the complaint, not the facts underlying it. *Id.* We accept the facts alleged in the complaint as true and view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Duty v. Boys & Girls Club of Porter Cnty.*, 23 N.E.3d 768, 771 (Ind. Ct. App. 2014). "We will affirm a dismissal under Trial Rule 12(B)(6) only if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances." *Snyder v. Town of Yorktown*, 20 N.E.3d 545, 550 (Ind. Ct. App. 2014), *trans. denied*. "We view motions to dismiss under Trial Rule 12(B)(6) with disfavor because such motions undermine the policy of deciding causes of action on their merits." *Wertz v. Asset Acceptance, LLC*, 5 N.E.3d 1175, 1178 (Ind. Ct. App. 2014) (quotation omitted), *trans. dismissed*.

### B. Private Right of Action under Title 11

When a civil cause of action is premised on the violation of a duty imposed by statute, the initial question is whether the statute in question confers a private right of action. *Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004),

*trans. denied.* A private party generally may not enforce rights under a statute designed to protect the general public and containing a comprehensive enforcement mechanism or remedies for violation of the duty. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000). Where a statute does not explicitly provide a private right of action to enforce its provisions, courts are frequently asked to find that the legislature intended that a private right of action be implied. *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005).

[11] Adams's wage claim arises from his employment with Meritor while imprisoned at CIF. Two chapters of Title 11 of the Indiana Code address offender employment. Indiana Code chapter 11-10-6 ("Chapter 6") contains general provisions concerning offender employment within the DOC. Pursuant to Chapter 6, DOC facilities are required to provide rehabilitative work and training programs (called "industry and farm programs") for offenders so that they may become productive citizens upon their release. *See* Ind. Code § 11-10-6-2(a). The DOC appoints an administrator who is "responsible for planning, coordination, operation, and employment and supervision of personnel" of these programs. *Id.* The programs may include producing, manufacturing, raising, or processing products or items for use or sale by the DOC. Ind. Code § 11-10-6-2(a)(1). The DOC may contract with private businesses "for the management of any industry or farm program or activity . . . ." Ind. Code § 11-10-6-11. Offenders may be required to participate in these programs or to do other work. Ind. Code § 11-10-6-3.

[12]    Indiana Code chapter 11-10-7 ("Chapter 7") contains provisions regarding the employment of offenders by private employers. The DOC commissioner "may establish programs for the employment of offenders by private persons" by entering into agreements with such persons for the establishment of facilities within the boundary of a correctional facility "for the manufacture and processing of goods or any other business, commercial, or agricultural enterprise." Ind. Code § 11-10-7-2(a). An offender may be employed under such an agreement "only on a voluntary basis and only after the offender has been informed of the conditions of . . . employment." Ind. Code § 11-10-7-3(b). Any such agreement "must provide that an offender employed by a private person under this chapter will be paid at least the prevailing wage for that type of work . . . including applicable wage increases for overtime work." Ind. Code § 11-10-7-3(a). Section 11-10-7-5 details how the offender's earnings under this chapter are to be distributed. "A commercial or agricultural enterprise established under this chapter is a private enterprise subject to laws governing the operation of similar enterprises in Indiana." Ind. Code § 11-10-7-4.

[13]    The Meritor brake shop is not in the nature of the traditional industry and farm training programs run by the DOC itself or run by the DOC but managed by a private business. Rather, Meritor operates its own private and for-profit commercial business on DOC premises. Employment in the brake shop is a voluntary undertaking by an offender and it is subject to the requirements and needs of Meritor. The facts alleged in Adams's complaint support a determination that the Meritor enterprise within CIF is subject to the provisions

of Chapter 7 rather than the provisions of Chapter 6, including the Chapter 7 requirement that offenders be paid at least the prevailing wage.

[14] Adams's complaint alleges Meritor has violated his statutory right to be paid the prevailing wage by paying him at most $1.10 per hour when comparable work by non-inmates pays at least $11.71 per hour. In *Kimrey v. Donahue*, 861 N.E.2d 379 (Ind. Ct. App. 2007), *trans. denied*, this court held—based on our supreme court's determination in *Blanck* that there is no explicit or implied right for inmates to challenge DOC disciplinary actions in court—that trial courts lack subject matter jurisdiction over prisoner complaints unless there is an explicit statutory right of action or an allegation that constitutional rights are being violated. *Id.* at 381-82 (citing *Blanck*, 829 N.E.2d at 507-09). Adams alleges Indiana Code section 11-10-7-4 is such an explicit statutory right to enforce in court the requirement that he be paid the prevailing wage for his work for Meritor, and he seeks to be paid the difference by pursuing a wage claim.

[15] It is important to note that we are concerned here *only* with a Chapter 7 enterprise, which is conducted by a private business for profit in cooperation with the DOC and not a program operated by the DOC itself to further its rehabilitative goals. Again, Indiana Code section 11-10-7-4 states that a Chapter 7 enterprise "is a private enterprise subject to laws governing the operation of similar enterprises in Indiana." As relevant to this particular case, private enterprises are subject to the Wage Payment statute, which provides that an employee who has not been paid the amount due may make a claim in a

trial court for unpaid wages and recover damages. *See* Ind. Code § 22-2-5-2.[6] The language of section 11-10-7-4 in conjunction with the law applicable to private enterprises and the lack of an enforcement mechanism in Chapter 7 itself at least implies there is a private right of action to enforce the prevailing wage requirement of Chapter 7.

[16] But legislative intent is the fulcrum of a private right of action. *See Roberts*, 813 N.E.2d at 1198 ("The determination of whether a civil cause of action exists begins with an examination of legislative intent."). At the time Adams filed his complaint, the only limitation in Chapter 7 on an offender's wages was that an offender was not eligible for unemployment compensation benefits. Ind. Code § 11-10-7-3(c). That section 11-10-7-4 provides at least an implied right to sue for failure to pay the prevailing wage is bolstered by the fact that after Adams instituted this action, the legislature amended Chapter 7 to add the following limitation: "An offender employed in accordance with this chapter is subject to IC 22-2-5-3 and IC 22-2-9-8." Ind. Code § 11-10-7-3(d) (as added by P.L. 223-2013, sec. 4, eff. May 9, 2013). Section 22-2-5-3 of the Wage Payment statute was simultaneously amended to specifically *exempt* from the provisions of that chapter criminal offenders in a facility operated by the DOC.[7] P.L. 223-2013,

---

[6] The Wage Payment statute applies to those with unpaid wage claims who are still employed or voluntarily left employment. *See St. Vincent Hosp. & Health Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002). That is likely the applicable chapter here, as it appears Adams was still employed by Meritor when he filed the complaint. The Wage Claims statute, Ind. Code ch. 22-2-9, applies to those with unpaid wage claims who were involuntarily separated from employment, *St. Vincent Hosp. & Health Ctr., Inc.*, 766 N.E.2d at 705.

[7] Indiana Code chapter 22-2-9 was likewise amended to provide criminal offenders in a facility operated by the DOC are specifically exempt from that chapter. Ind. Code § 22-2-9-8 (as added by P.L. 223-2013, sec. 6,

sec. 5. Thus, prior to May 9, 2013, only an offender's right to seek unemployment benefits was limited; after May 9, 2013, an offender's right to assert a wage claim was also limited. If there was no existing private right of action under Chapter 7, there would have been no need to amend the statute to specifically *exclude* such an action. Section 11-10-7-4 provides that a Chapter 7 enterprise is subject to the laws governing other private enterprises. At the time Adams filed his complaint, those laws included the right to make a wage claim. As the dissent notes, legislative intent is best determined by the statutory language. Here, the legislature has *changed* the language of the statutory scheme and there is no discernible reason for the change other than to foreclose a right that had previously existed.

[17] Considering Adams's specific claim, we conclude there was, until May 9, 2013, a right in Chapter 7 for an offender to seek unpaid wages from a private employer in a private action. There may be other impediments to Adams's recovery of the wages to which he claims he is entitled which will be discerned at a later stage in the development of the record. But Adams's complaint, filed prior to May 9, 2013, has on its face stated a claim upon which relief could be granted, and we reverse the trial court's grant of the Meritor and State defendants' Trial Rule 12(B)(6) motions to dismiss the wage claim.

---

eff. May 9, 2013). An emergency was declared for this act and it became effective upon passage. P.L. 223-2013, sec. 7.

## II. Personal Injury Claim

### A. Standard of Review

[18] The party moving for summary judgment must "affirmatively negate an opponent's claim" by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal quotation marks and citation omitted); *see also* Ind. Trial Rule 56(C). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact in order to preclude summary judgment. *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012).

[19] We review an order granting summary judgment de novo, which is the same standard of review applied by the trial court. *Hughley*, 15 N.E.3d at 1003. When the trial court has granted summary judgment to the moving party, the nonmoving party has the burden on appeal of persuading us that the grant of summary judgment was in error. *Id.* However, "we carefully assess the trial court's decision to ensure that [the nonmoving party] was not improperly denied his day in court." *Id.* In reviewing the record, we consider only the evidentiary matter the parties have designated to the trial court, *see* T.R. 56(C), (H), and we construe all reasonable inferences in favor of the nonmoving party, *Hughley*, 15 N.E.3d at 1003. "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to

resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).

[20] Indiana's heightened summary judgment standard "consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

## B. Exhaustion of Administrative Remedies

[21] Adams's complaint raises a variety of allegations to the effect that the Medical defendants did not provide him adequate medical care for an injury he sustained while working at CIF and for a subsequent heart attack, and the State-CIF defendants did not investigate his claims against the Medical defendants. Adams did not, prior to filing this lawsuit, pursue a grievance concerning those allegations through the DOC's procedure. The trial court granted summary judgment to the Medical and State-CIF defendants on Adams's state tort claims because the designated evidence showed Adams did not exhaust his administrative remedies.

[22] In *Higgason v. Stogsdill*, 818 N.E.2d 486, 489 (Ind. Ct. App. 2004), *trans. denied*, we acknowledged that the procedural treatment of any federal claims with respect to prison conditions made in either federal or state courts is controlled by the Prison Litigation Reform Act (the "PLRA"), and that the PLRA requires prisoners to exhaust "such administrative remedies as are available" before filing such claims. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524

(2002). We have applied a similar analysis to state tort claims. *See Higgason v. Lemmon*, 818 N.E.2d 500, 503 (Ind. Ct. App. 2004), *trans. denied.* "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quotation omitted).

> In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for causes ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter*, 534 U.S. at 525 (citations and internal quotation marks omitted).

[23] The administrative remedies available in this case are outlined in the Offender Grievance Process ("OGP") found in the DOC's "Policy and Administrative Procedures: Manual of Policies and Procedures." *See* Appellants' App. at 413-42 (Attachment 1 to the State-CIF defendants' motion for summary judgment). The OGP has been in place at CIF since December 1, 2005, and describes how an offender can grieve actions or decisions by individual staff, contractors, or volunteers. In short, the offender must take one informal and two formal steps to exhaust the grievance process. The offender must first attempt to informally resolve the issue by discussing it with a staff member within five working days. If the issue cannot be informally resolved, the offender may proceed to the formal process by submitting a written form to the Executive Assistant of the

facility within twenty working days from the event triggering the concern. If the form is in compliance with the OGP, the Executive Assistant accepts and logs the form as a grievance and assigns a case number. If the grievance is still not resolved in a manner that satisfies the offender or if he does not receive a response within twenty-five working days after submitting the grievance, the offender may file an appeal to the DOC's Grievance Manager.

[24] The evidence designated in support of the Medical and State-CIF defendants' motions for summary judgment indicate Adams never pursued a grievance regarding his medical treatment in 2010. *See* Appellants' App. at 411-12 (Declaration of Robert Stafford, CIF Grievance Specialist, stating DOC keeps records of every formal grievance and formal appeal filed by an offender and DOC records show Adams filed only one unrelated grievance prior to filing this lawsuit). Adams does not dispute that he did not file a grievance regarding his personal injury claim; instead, he claims there were no available administrative remedies for him to exhaust as to this claim.

[25] "Issues or complaints regarding medical treatment are claims that can, and should, be grieved through the [OGP]." Appendix of the Appellees at 105 (Affidavit of Robert Stafford). In addition, "offenders can grieve actions of individual staff, including claims that staff was not properly investigating . . . complaints regarding medical staff." Appellants' App. at 410. Adams appears to be correct that the DOC's grievance procedure could not provide him the specific relief he wanted – money damages. *See id.* at 419 (OGP stating the DOC "will not pay money damages through the grievance procedure").

However, that does not render the administrative remedy "unavailable." The Supreme Court of the United States has held an administrative remedy is "available" under the PLRA as long as the administrative authority has the ability to take some action in response to a grievance, even if it is not the requested action. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (stating the broad exhaustion requirement of section 1997e(a) "makes it highly implausible that [Congress] meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms"). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741).

[26] Nonetheless, Adams claims he "is specifically prohibited to file a grievance concerning his State and Medical Defendant claims, because, no form will be logged as a grievance if it seeks financial compensation." Corrected Appellants' Br. at 38. Adams points to language in the OGP that "[u]ntil the Executive Assistant accepts and logs the document, it is a form and not a grievance." Appellants' App. at 415. He further points to the standards for a grievance form, which include a requirement that the offender suggest some relief or remedy, and to the process for screening the grievance, which states the Executive Assistant "may reject the grievance form and return it to the offender unfiled if any of the [standards] are not met." *Id.* at 430. Therefore, Adams asserts he has no administrative remedy because "the Executive Assistant *will*

*not accept for filing* any form that seeks monetary relief." Corrected Appellants' Br. at 40 (emphasis added).

[27] The OGP neither expressly states nor implies that the Executive Assistant will automatically reject a form that suggests money damages as a remedy. The OGP states the Executive Assistant "may" reject a grievance form for failing to meet the required standards. It does not state that the Executive Assistant must or shall do so. The term "may" ordinarily implies a grant of discretion, whereas the word "shall" is construed as mandatory. *Alden v. State*, 983 N.E.2d 186, 189 (Ind. Ct. App. 2013), *trans. denied*. Therefore, the statement in the OGP that the Executive Assistant "may" reject a grievance form that does not meet the standards indicates the Executive Assistant also retains the discretion to accept such a form. Further, the OGP states an offender is required to include in his grievance form a suggested remedy. It does not state the offender must suggest an available remedy. Therefore, a grievance seeking money damages does not necessarily fail to meet the standards and will not necessarily be rejected.

[28] That the DOC could not have provided Adams the relief he seeks does not excuse him from the requirement that he exhaust his available administrative remedies. Adams had a remedy to exhaust but he failed to pursue it. Therefore, the trial court did not err in granting summary judgment to the Medical and State-CIF defendants.

# III. Participation in Hearing

[29]  On October 10, 2012, the Meritor defendants filed their motion to dismiss Adams's complaint. On October 19, 2012, Adams filed a twelve-page response to the motion to dismiss and also filed a Verified Emergency Motion for Preliminary Injunction. In his motion for preliminary injunction, he made a number of allegations against various defendants, including retaliatory discharge from the Meritor brake shop where he was employed, fraud, human trafficking, refusal to pay him the prevailing wage, theft, and various other misconduct. Adams was notified by mail on November 7 that the court had set a hearing on both motions for December 3.

[30]  Adams prepared a motion to appear via video conference or same-day transport. The certificate of service is dated November 19, 2012. He alleges in his brief he was delayed in submitting the motion to the court due to a closure of the prison law library from October 25 to November 25, and a printer malfunction from November 26 to December 10,[8] but the motion itself contains no allegations as to the reason for the delay. The motion was filed by the court clerk on November 28, and the trial court stated it did not receive the motion until November 30. The December 3 hearing was conducted, and all

---

[8] It is unclear in any event how this affected the timing of the filing of the motion to appear by video conference or same-day transport. The motion is dated November 19, 2012, which falls during the time Adams now alleges the prison library was closed. If Adams was nonetheless able to prepare and file his motion while the prison library was closed, that is no excuse for the delayed filing. And the motion is also dated prior to the time the printer was malfunctioning. Adams alleges the printer malfunction delayed all prisoners in receiving legal correspondence, but the relevant legal correspondence would have been the trial court's order setting the hearing, which was mailed on November 7, 2012, well in advance of the printer malfunction.

defendants were present but Adams did not appear.  With regard to Adams's absence, the trial court stated at the outset of the hearing,

> The petition to transport is denied.  County simply doesn't have the resources or the money . . . or the officers to transport for a civil case—can't do it.
>
> Secondly, the request for video conferencing, while reasonable, requires a substantial notice to the Court, so that we can set up the technology to do it.  This notice was provided to the Court— by the time the Judge saw it, it was Friday before a Monday hearing and that's not enough time for us to arrange the technology set up we need.  We've checked with our IT department and we need at least a week. That's a minimum, possibly ten (10) days.  It is possible to do, but it has to be noticed up ahead.
>
> Now, on the record, I instructed my court staff to contact the correctional facility to attempt to convey to the plaintiffs a mechanism by where they could call in.  We've made long distance phone calls at the Court's expense to provide that information.  We've received no response, either from plaintiff or the correctional facility person, contact person.  Which contact person was named in one of the plaintiff's pleadings.  That's the person we contacted.  Best we could do – the Court could do was leave a message . . . .

Transcript at 10-11.  On December 17, the trial court issued an order denying the motion to appear via video conference or same-day transport for the same reasons stated at the hearing, denying Adams's motion for preliminary injunction, and granting the Meritor defendants' motion to dismiss.

[31]     Adams contends he had a right to be heard on his motion for preliminary injunction and on the Meritor defendants' motion to dismiss and therefore the trial court erred in denying his motion to appear and conducting the hearing in his absence.[9]

[32]     It was not error for the trial court to conduct the hearing in this civil case without Adams's presence. An incarcerated plaintiff has the constitutional right to bring a civil action against a party that has injured him, but a trial court cannot secure the attendance of an incarcerated plaintiff at a civil action unrelated to the case resulting in incarceration. *Sabo v. Sabo*, 812 N.E.2d 238, 242 (Ind. Ct. App. 2004).

> [C]onfinement makes it impossible for him to appear in court and act as his own lawyer, but when anyone commits a felony and is convicted and is confined in State prison his ability to pursue his business in person and to exercise many other rights and privileges, which he otherwise might have had, are curtailed
> . . . .

*Hill v. Duckworth*, 679 N.E.2d 938, 940 (Ind. Ct. App. 1997). Such curtailment does not violate the incarcerated person's rights under the constitution; it is merely an incident of punishment. *Id.*

---

[9] Adams does not appear to argue that the trial court erred in denying his motion for preliminary injunction on the merits; rather, he argues only that it was error to deny him the right to be heard on the motion.

He raises as additional related issues whether he had the right to subpoena witnesses on his motion and whether he had the right to have the hearing rescheduled. As for these issues, we can find in Adams's brief no independent argument on those questions, and we are therefore unable to address them. *See* App. R. 46(A)(8)(a); *Howard*, 32 N.E.3d at 1195 n.12 (failure to provide cogent argument in support of claim of error waives appellate review of such claim).

[33]  The trial court was not obliged to grant a transport order because Adams was incarcerated for a matter unrelated to his tort claim. Still, some avenue must exist for an incarcerated plaintiff to prosecute his claim, *id.*, and we have previously noted that there are several alternatives to personal appearance in court, including submitting the case to the court on documentary evidence, telephonic conference, securing someone else to represent the plaintiff, and postponing the hearing until the plaintiff's release, *Hill*, 679 N.E.2d at 940 n.1. Adams in fact sought one of those alternatives, requesting a video conference, but he did so too late for the trial court to arrange his appearance in that manner. Even if Adams's motion had been promptly received by the trial court after Adams served it, the trial court likely would not have had sufficient time to arrange a video conference. The certificate of service on the motion to appear is dated November 19, 2012. The trial court stated it would take at least a week and possibly ten days to arrange a video conference. As the Thanksgiving holiday fell between November 19 and December 3, 2012, the motion was filed less than ten business days before the hearing. Nonetheless, the trial court tried to arrange a phone conference for Adams to appear at the hearing, but his designated contact was unavailable to take the court's call and make the arrangements. The trial court did all it could to try to facilitate Adams's personal participation in the hearing.

[34]  Adams's motion for preliminary injunction was verified, meaning he verified under the penalties for perjury that the representations made therein were true.

*See* Ind. Trial Rule 11(B); Appellants' App. at 156. Trial Rule 11(C) provides that when pleadings are verified, they

> shall be accepted as a representation that the signer had personal knowledge thereof or reasonable cause to believe the existence of the facts or matters stated or alleged therein; and, if otherwise competent or acceptable as evidence, may be admitted as evidence of the facts or matters stated or alleged therein . . . .

*See also Kuhn v. State*, 222 Ind. 179, 183, 52 N.E.2d 491, 492-93 (1944) (noting it is a "common practice" in injunction cases to decide issues of fact upon submission of verified complaints and answers or upon affidavits and counter affidavits, and when so submitted, "uncontroverted facts appearing in the verified pleadings are treated as true and the trier resolves conflicts as he would in considering oral testimony"). The defendants did not respond to Adams's motion, and thus the allegations of the verified motion were uncontradicted and could be accepted as true. If Adams believed additional evidence was required beyond the allegations of his complaint, he could have submitted affidavits in support of his motion. Further, Adams filed a lengthy reply to the Meritor defendants' motion to dismiss. Because the trial court had before it Adams's documentary evidence on both pending motions, it was not error for the trial court to rule on the motions in Adams's absence.

# Conclusion

[35] At the time Adams filed his complaint, the statute upon which he based his wage claim against the Meritor and State defendants afforded him a private

right of action to seek unpaid wages. The complaint is therefore legally sufficient to withstand a Trial Rule 12(B)(6) motion, and the trial court abused its discretion in dismissing that claim. The trial court properly granted summary judgment to the Medical and State-CIF defendants, however, because Adams did not exhaust his administrative remedies with respect to his personal injury claim. Adams did not avail himself of the chance to participate in the hearing by telephone but was able to participate by the submission of documentary evidence, and therefore the trial court did not err in conducting the hearing in his absence.

[36] Reversed in part and affirmed in part.

Mathias, J., concurs.

May, J., concurs in part, dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

Chuck W. Adams, Charles E. Howard, et al.,

*Appellants-Plaintiffs,*

v.

ArvinMeritor, Inc., et al.,

*Appellees-Defendants*

Court of Appeals Case No.
49A02-1406-PL-465

**May, Judge, concurs in part, dissents in part.**

[37] I agree with the majority that the trial court properly granted summary judgment to the Medical and State-CIF defendants because Adams had an available administrative remedy as to his personal injury claim but failed to pursue it to completion, and that the trial court did not err in denying Adams' motion to appear by video conference or same-day transport. But I believe the majority's own analysis does not permit the result it reaches with regard to

whether Adams had a private right of action to pursue his wage claim, and therefore respectfully dissent from that holding.

[38] When a civil cause of action is premised on violation of a duty imposed by statute, the initial question is whether the statute in question confers a private right of action. *Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*. The legislature did not explicitly[10] provide in Title 11 for a private right of action. *Kimrey v. Donahue*, 861 N.E.2d 379, 382 (Ind. Ct. App. 2007), *trans. denied*.

[39] In *Blanck*, our Supreme Court determined Blanck had no private right of action under five provisions of Indiana Code Title 11: (1) Ind. Code § 11-10-1-7, which requires periodic review of the reasons for segregation of an offender where the DOC has found segregation is necessary for the offender's safety or the safety of others; (2) Ind. Code § 11-11-5-4, which prohibits the DOC from using various forms of discipline, addresses substantial changes in heating, lighting, or ventilation, and imposes certain restrictions on medical and dental care; (3) Ind. Code § 11-11-5-5, which prohibits the DOC from imposing any discipline before affording the person charged with misconduct a hearing to determine his or her guilt or innocence and, if guilty, the appropriate action; (4)

---

[10] The majority correctly notes that where a legislative body does not explicitly provide for a private right of action to enforce the provisions of a particular statute, "courts frequently are asked to determine whether the Legislature intended a private right of action be implied." (Slip op. at 8) (citing *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005)). But as explained below, this court has held that any private right of action under Title 11 must be *explicitly* provided by statute. It is therefore inappropriate to consider whether a private right of action might be implied.

Ind. Code § 11-11-5-6, which requires periodic review of the reasons for segregation of an offender charged but not yet found guilty of misconduct; and (5) Ind. Code § 11-11-5-7, which requires periodic review of the reasons for segregation of an offender found guilty of misconduct. 829 N.E.2d at 510.

[40] The *Blanck* Court noted each of those statutes imposes certain duties on the DOC and presumably confers substantive rights on inmates, but none of them contains any provision suggesting inmates have a right to enforce any such rights in court. 829 N.E.2d at 509. "So if there is subject matter jurisdiction over claims to enforce any such rights, it must either be because the Legislature intended it to be inferred from these statutes or because it is provided elsewhere in law." *Id*.

[41] The *Blanck* Court determined the legislature did not intend for inmates to have a private right of action to enforce those statutes. *Id*. at 510. It noted the Legislature specifically excluded from the Administrative Orders and Procedures Act (AOPA) any "agency action related to an offender within the jurisdiction of the department of correction." *Id*. (quoting Ind. Code § 4-21.5-2-5(6)). That reflected the clear intent of the Legislature "to deny to inmates charged with or found guilty of misconduct the procedure specified in the AOPA, including judicial review. And with the intent of the Legislature on this point being clear, we are not free to infer a private right of action." *Id*. at 510.

[42] In *Kimrey*, we determined the *Blanck* analysis applied to other parts of Title 11:

> While an argument could be made that the *Blanck* decision is limited to prison discipline matters, we think that the *Blanck* Court's analysis has broader application to review of complaints brought by inmates of the Department of Correction seeking to enforce asserted statutory "rights," such as in the case before us. We garner from the *Blanck* decision that trial courts lack subject matter jurisdiction over such complaints *unless an explicit private right of action is afforded by statute* or an allegation is made that constitutional rights are being violated.[11] Here, the Claimants allege no constitutional violations; thus, in order for the trial court to have the power to review their complaint, the Claimants must have been given *an explicit private right of action* to enforce I.C. § 11-11-3-6.

861 N.E.2d at 382 (emphasis supplied) (footnote in original omitted) (footnote added). We therefore did not find error in the dismissal of Kimrey's complaint to the extent it was premised on alleged violations of Title 11. *Id*. at 383.

[43] In the case before us, the majority opinion (the author of which concurred in *Kimrey*), acknowledges the *Kimrey* language, but despite that, identifies no explicit language in section 11-10-7-4 that provides for a private right of action. There is none, as that section states only: "A commercial or agricultural enterprise established under this chapter is a private enterprise subject to laws governing the operation of similar enterprises in Indiana." Ind. Code § 11-10-7-4. It says nothing more. That is not language that provides a claimant "an explicit private right of action."

---

[11] Adams prefaced his amended complaint by saying he was bringing it "pursuant to" certain constitutional provisions, (Appellants' App. at 47), but no specific allegations of constitutional violations can be found in his complaint.

Despite our statement in *Kimrey* that there must be an *explicit* right of action, the majority instead reverses the trial court based on what it concedes is an *implicit* right of action: "section 11-10-7-4 provides at least an implied right to sue."[12] (Slip op. at 11.) That result cannot be reconciled with our *Kimrey* statement, and I cannot accept the majority's opinion that the *Kimrey* requirement of an "explicit" right of action can be satisfied by something only "implicit."[13]

The majority implies a cause of action on the premise that such was the legislature's intent. But our Supreme Court has cautioned that legislative intent is best determined by what the statutory language itself includes and not include. *See, e.g., N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002) (court will not read into the statute that which is not the expressed intent of the legislature, and as such, it is just as important to recognize what the statute does not say as it is to recognize what it does say).

I believe our Supreme Court's *Blanck* analysis and this court's *Kimrey* analysis are correct, and they do not permit reversal based on only an implied right of action. Cognizant of what Ind. Code § 11-10-7-4 says and does not say, I

---

[12]  The majority finds this "implied right" because under Ind. Code § 11-10-7-4, Meritor is "subject to laws governing the operation of similar enterprises." That includes the Wage Payment statute, under which an employee may sue for unpaid wages. I would not stretch the language of Ind. Code § 11-10-7-4, which addresses only the "operation" of "enterprises" to cover unrelated claims by employees.

[13]  The word "implied" is "used in law as contrasted with 'express'; *i.e.*, where the intention in regard to the subject matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties." Black's Law Dictionary 888 (Rev. Fourth Ed. 1968).

would affirm the trial court's determination Adams had no private right of action. Accordingly, I must respectfully dissent.